UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON URQUHART and DOUG URQUHART, | )<br>)<br>) |
| Petitioners, | )<br>) No. 16 C 2301 |
| v. | )<br>) Judge Sara L. Ellis |
| HERBERT C. KURLAN and VTRADER PRO, LLC, | )<br>)<br>) |
| Respondents. | ) |

## OPINION AND ORDER

Alleging that Respondents Herbert C. Kurlan and VTrader Pro, LLC ("VTrader") engaged in actions that caused Petitioners Jason and Doug Urquhart (collectively, the "Urquharts") to lose over $4 million that they had in their trading accounts, the Urquharts instituted an arbitration proceeding against Kurlan and VTrader. An arbitration panel rendered a final award in favor of the Urquharts, prompting the Urquharts to file this action seeking confirmation of the award pursuant to the Federal Arbitration Act ("FAA), 9 U.S.C. § 1 *et seq.*[1] Kurlan and VTrader responded by filing a motion to vacate the arbitration award.[2] Kurlan and VTrader contend that the arbitrators exceeded the scope of their powers, failed to render a definite and final award, and did not conduct a fundamentally fair hearing. The Court rejects all of Kurlan and VTrader's arguments but one. Because the Court finds the apportionment of the award between the Urquharts, on the one hand, and Kurlan and VTrader, on the other,

---

[1] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties have confirmed that they are citizens of different states, providing additional details about the citizenship of VTrader's members as requested by the Court. *See* Docs. 40, 41.

[2] Kurlan and VTrader filed an initial motion, Doc. 20, and then an amended application to vacate the award, Doc. 26-1, which corrects typographical errors and adds jurisdictional and venue allegations, *see* Doc. 26. The Court granted leave to file the amended application. *See* Doc. 30.

ambiguous, the Court remands this case to the arbitration panel for clarification on this discrete issue. The Court denies the Urquharts' motion to confirm the arbitration award without prejudice to renewal after the panel clarifies the award.

## BACKGROUND

VTrader was a Chicago Board Options Exchange, Inc. ("CBOE") member and trading permit holder registered with the Financial Industry Regulatory Authority. It operated from 2003 until it liquidated its business in 2013. Kurlan was VTrader's managing member and made all material decisions.

VTrader contracted with Merrill Lynch Professional Clearing Corporation ("Merrill Lynch") to establish a joint back office operation. This allowed VTrader to pool capital in a non-segregated environment, meaning that profits and losses of individual member traders were netted against one another. VTrader had Class A and Class B members. Texas Capital Management ("TCM") became a Class B member in 2006. TCM was formed and controlled by Michael DeNio. TCM had its own members, including the Urquharts, who each opened individual sub-accounts with TCM in 2007. Jason was designated as the trader on both accounts, and the two were considered a single trading unit. The amounts in the Urquharts' and VTraders' accounts fluctuated. According to the Urquharts, in 2011, their accounts grew to over $4 million. VTrader allowed the Urquharts to withdraw $900,000 from their accounts between January and April 2011. After this, however, the Urquharts were not able to withdraw any additional amounts. Instead, in September 2011, VTrader liquidated all positions, including those held by the Urquharts, to address shortages in other VTrader accounts.

On or about October 31, 2012, the Urquharts filed a statement of claim against Kurlan, VTrader, and Merrill Lynch demanding arbitration, alleging negligent misrepresentation,

fraudulent inducement and concealment, unjust enrichment, promissory estoppel, breach of fiduciary duty and good faith and fair dealing, and violations of industry rules and regulations.[3] The Urquharts claimed, among other things, that Kurlan and VTrader made material misrepresentations to induce the Urquharts to continue trading, all the while knowing the status of other VTrader accounts that would ultimately lead the Urquharts not to realize the profits from their trading activities. The Urquharts requested monetary damages, pre- and post-award interest, forum fees, and all other relief to which they were entitled. The parties agreed to submit the dispute to arbitration pursuant to the CBOE's rules of arbitration. The arbitration panel was constituted on December 23, 2013.

The arbitration hearing took place from November 2 through 6, 2015, with an additional session on November 30, 2015. Kurlan represented himself and VTrader *pro se* for the first week of proceedings because their attorney withdrew shortly before the beginning of the hearings. Kurlan obtained an attorney, Shane Wachtel, to represent him individually shortly after the week of hearings concluded, providing Kurlan with representation for the final November 30 session. Both Kurlan and Wachtel repeatedly asked for additional time to prepare and present a defense, but the arbitration panel rebuffed those requests.

Over the course of the hearing, the Urquharts testified themselves and called Kurlan as a witness. They also called an expert, Ed Keiley, and had their counsel, Michael Brown, testify concerning the attorneys' fees. Kurlan and VTrader called three witnesses: Gary Anderson, a fact witness and expert, Mark Bold, an industry expert, and Mark Duffy, an industry and legal expert. Kurlan also recalled Jason to testify on November 30. Kurlan and VTrader complained that they were not able to present the testimony of DeNio or Donald Mankin, VTrader's

---

[3] The Urquharts claimed Merrill Lynch was liable for aiding and abetting in addition to the other claims. Merrill Lynch challenged the ability to arbitrate the claim and was dismissed from the case on December 10, 2013.

accountant. But at the close of the hearing, Wachtel affirmed to the panel that Kurlan had presented his case the best he could.

On February 8, 2016, the arbitration panel rendered its final award in favor of the Urquharts and against Kurlan and VTrader in the total amount of $5,405,958.96, broken down as follows: (1) $3,860,265.00 in compensatory damages and pre-award interest; (2) $1,182,205.00 in attorneys' fees; (3) $360,488.96 in punitive damages; and (4) $3,000.00 in forum fees. The award remains outstanding.

## ANALYSIS

Under the FAA, the Court must confirm the arbitration award unless certain statutory exceptions, as set forth in §§ 10 and 11 of the FAA, apply. 9 U.S.C. § 9. The Court addresses whether the exceptions that Kurlan and VTrader raise prevent confirmation in this case.

**I.     Alleged Issues with Definiteness and Scope of Award**

Section 10(a)(4) provides that the Court may vacate an arbitration award where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Court's review is extremely limited, with Kurlan and VTrader bearing a heavy burden. *Oxford Health Plans LLC v. Sutter*, --- U.S. ----, 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013). The Court may only vacate the award if the arbitrators acted outside the scope of their authority, i.e., if they issued an award that "does not draw its essence from the agreement between the parties." *Yasuda Fire & Marine Ins. Co. of Europe, Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994). "[T]hinly veiled attempts to obtain appellate review of the arbitrator's decision . . . [are] not permitted under the FAA." *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration

4

award." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008); *see also Oxford Health Plans*, 133 S. Ct. at 2068 ("[T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.").

The Seventh Circuit has also indicated that the "mutual" and "final" requirement means that "the arbitrators must have resolved the entire dispute (to the extent arbitrable) that had been submitted to them" and the "definite" requirement means that "the award is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable." *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001). Stated another way, an arbitration award is unenforceable if it "is either incomplete in the sense that the arbitrators did not complete their assignment (though they thought they had) or so badly drafted that the party against whom the award runs doesn't know how to comply with it." *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002). These requirements "are ones more of form than of substance . . . not to be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co.*, 266 F.3d at 650.

### A. Indefiniteness of the Award

First, Kurlan and VTrader argue that the Court should vacate the award because it is indefinite. Specifically, they complain that the arbitrators did not apportion the award between the claimants (the Urquharts) or the respondents (Kurlan and VTrader), nor did they indicate whether they intended for the award to impose joint and several liability on Kurlan and VTrader. This, according to Kurlan and VTrader, makes the award ambiguous, leaving it unclear who is to pay what part of the award and who is to receive what part of the award. The award reads:

5

> After due deliberation and in consideration of the hearing testimony, documentary evidence, and other submissions made by the parties, the undersigned arbitrators, in full and final resolution of all issues in controversy, award as follows:
>
> 1. Claimants' request for compensatory damages is GRANTED, in part, in the total amount of $3,860,265.
>
> 2. Claimants' request for attorney fees is GRANTED in the total amount of $1,182,205.
>
> 3. Claimants' request for punitive damages is GRANTED in the amount of $360,488.96.
>
> 4. Respondent shall pay all filing and forum fees as detailed below.

Doc. 21-2 at 267. The discussion of filing fees uses the term "Respondents" (plural) instead of "Respondent" (singular) as used in the award section. Kurlan and VTrader appear to suggest that this could mean that the arbitrators did not intend for the compensatory damages award to be against both of them where the arbitrators promised to resolve the issue of Kurlan's individual liability in rendering their decision.

The Urquharts argue that no ambiguity exists: they submitted their claims together and requested that VTrader and Kurlan be held jointly and severally liable. *See* Doc. 28-2 at 24 (request for relief in statement of claim states "the Urquharts request that the Arbitrators enter a final award against Respondents, jointly and severally, awarding them (a) all damages suffered as a result of Respondents['] conduct"). Although they held separate accounts, the Urquharts point out that they traded together, with Jason acting as the designated trader for both accounts. Taken together with the fact that both sides acted as if each side consisted of one party,[4] the Urquharts argue that the award has only one reasonable interpretation: that Kurlan and VTrader are jointly and severally liable to the Urquharts, who may apportion the award between

---

[4] This is not entirely true, for Wachtel entered his appearance only on behalf of Kurlan and not also to represent VTrader.

6

themselves as they see fit. But because the Court cannot definitively resolve the ambiguity from the record, the Court finds it appropriate to remand the matter to the arbitrators for clarification. *See Tri-State Business Machs., Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000) (where a court cannot resolve an ambiguity in an award from the record, it should remand it to the panel for clarification); *NYKCool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867(LAK)(AJP), 2011 WL 3666579, at *2 (S.D.N.Y. Aug. 9, 2011) (noting that the judge remanded arbitration award to arbitrators "to determine whether the respondents are jointly and severally liable for the entire amount of the award and, if not, the amount of the several liability of each").

### B. Scope of the Award

At the same time, the Court dispenses with Kurlan and VTrader's remaining arguments concerning the arbitrators' actions in allegedly exceeding the scope of their powers in rendering the arbitration award. Specifically, Kurlan and VTrader claim that the arbitrators went beyond the claims submitted to them for adjudication in making their award. They argue that the arbitrators must have found Kurlan liable on a federal securities law theory that the Urquharts did not plead in their statement of claim but argued during the hearing. Kurlan and VTrader also contend that the arbitrators should not have awarded attorneys' fees because no basis existed for such an award. Finally, they argue that no evidence demonstrated that Kurlan or VTrader owed the Urquharts any duty.

The Court cannot address these arguments because they are inappropriate attempts to obtain appellate review of the arbitrators' decision. *See Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision."); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1255–56 (7th Cir.

7

1994) (rejecting argument that damages award should be vacated because it was barred by applicable law, noting that "whether or not the claim is permitted under the applicable law is irrelevant under 10(a)(4)" and that "mere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award"); *Boldischar v. Reliastar Life Ins. Co.*, No. 14 C 6844, 2016 WL 3997596, at *5 (N.D. Ill. July 26, 2016) (rejecting argument that arbitrators exceeded powers and erred in awarding certain damages, finding that these claims of legal or factual mistakes were not valid bases for overturning an arbitrator's decision). Although the arbitrators rendered a general award, they were not required to specify the bases for their award. *See Heat Energy Advanced Tech., Inc. v. Standard Mach. & Equip. Co.*, No. 85 C 3613, 1986 WL 3627, at *5 (N.D. Ill. Mar. 13, 1986) ("The arbitrator's 'lump sum' award to Standard Machine does not automatically fall due to its brevity. Arbitrators are not required to state the reasons for their awards."). And the Court cannot conclude from the decision that the arbitrators exceeded their powers and addressed an unpleaded federal securities law claim. *See Geneva Secs., Inc. v. Johnson*, 138 F.3d 688, 692 (7th Cir. 1998) ("The general presumption in favor of arbitration compels courts to affirm even the most general awards. In cases involving multiple claims, however, such awards provide little basis for courts to determine whether an award was based, at least in part, upon claims that the parties never agreed to arbitrate. . . . [I]t is insufficient for the appellants to show that the Johnsons submitted an ineligible claim for arbitration, and that the arbitration panel may have relied upon that claim in fashioning its award." (citations omitted)). Unlike in *Geneva Securities*, where the court found the arbitrators may have exceeded their powers by specifically listing in their award a claim that was clearly time-barred, here, the award does not mention the federal securities law claims that Kurlan and VTrader suggest should not have been submitted to

8

the arbitrators. *Cf. id.*at 692. Moreover, the Urquharts submitted their claim against Kurlan based on numerous theories and the Court refuses to delve into determining whether the facts or law supported personal liability on any of these theories. *See Prime United Inc. v. Sears Holding Mgmt. Corp.*, No. 12 C 5364, 2013 WL 3754829, at *3–4 (N.D. Ill. July 16, 2013) (refusing to vacate award based on alleged legal error where arbitrator did not provide reason for award, there was no way of knowing why arbitrator awarded amounts it did, and "it is not the province of the federal courts to examine whether arbitrators' contract interpretations are correct").

Finally, both sides requested attorneys' fees during the hearing, undermining Kurlan and VTrader's argument that the arbitrators exceeded their powers in awarding them. *See Astanza Design, LLC v. Giemme Stile, S.p.A.*, --- F. Supp. 3d ----, 2016 WL 7324266, at *5 (M.D.N.C. Dec. 15, 2016) (collecting cases of parties agreeing to submit attorneys' fees to arbitrators through their conduct, noting that "Defendants' attempt to walk back their requests for fees as having been made 'perfunctorily' . . . is, to say the least, unconvincing"); *WMA Secs., Inc. v. Wynn*, 105 F. Supp. 2d 833, 839 (S.D. Ohio 2000) ("It is manifestly inconsistent to request attorney fees and then to argue, after fees are awarded to the adverse party, that the panel lacked the power to award fees in the first place."). Additionally, the American Rule has not uniformly been applied in arbitrations, and regardless, attorneys' fees could have been awarded for the Urquharts' fraud or misrepresentation claims. *See Eljer Mfg., Inc.*, 14 F.3d at 1257 (refusing to apply American Rule to arbitration and finding award of attorneys' fees acceptable, noting that they may have been awarded "as damages for fraud or misrepresentation and not pursuant to a statute" as "Illinois law permits the recovery of attorneys' fees as damages if the plaintiff proves that the fees resulted from the defendant's misconduct and the fees are reasonable"); *Wilson v. Sterling Foster & Co.*, No. 98 C 2733, 1998 WL 749065, at *6 (N.D. Ill. Oct. 15, 1998)

9

(following *Eljer* to find that arbitrators could have awarded attorneys' fees "as damages for fraud or misrepresentation"). Alternatively, the arbitrators could potentially have awarded the attorneys' fees pursuant to the CBOE arbitration rule that allows arbitrators to award "other costs and expenses," which mirrors New York Stock Exchange rules that have been interpreted in such a manner. *See Prudential-Bache Secs., Inc. v. Tanner*, 72 F.3d 234, 242–43 (1st Cir. 1995); *Thomas v. Prudential Secs., Inc.*, 921 S.W.2d 847, 851 (Tex. App. 1996).

Because of the Court's limited power to review the arbitrators' award, the Court does not find that Kurlan and VTrader have demonstrated that the arbitrators exceeded their power because they only make arguments concerning legal or factual mistakes that do not qualify as valid bases for overturning an arbitrator's decision. *See Boldischar*, 2016 WL 3997596, at *5 (finding that plaintiff's arguments concerning arbitrators exceeding powers fell "outside the scope of the court's review"). But as discussed above, it will remand the award to the arbitrators to clarify their intention as to the apportionment of the award.[5]

## II. Alleged Unfairness of Hearing

VTrader and Kurlan also challenge the award pursuant to § 10(a)(3) of the FAA, which allows the Court to vacate an order "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). To warrant vacatur, "the arbitrators' failure to consider pertinent evidence must have deprived [VTrader and Kurlan] of a fundamentally fair hearing," which typically means "wrongly exclud[ing] the sole evidence on a pivotal issue." *Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014). A fundamentally fair hearing is one

---

[5] The Court denies Kurlan and VTraders' request to remand the award to a new panel, however, as this remand is limited to clarification of the award rendered by the original panel to determine the arbitrators' intentions for the allocation of the award.

10

where the party has been provided with "adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. The Int'l Amateur Athletic Fed.*, 244 F.3d 580, 592 (7th Cir. 2001) (citation omitted). The arbitrators enjoy wide latitude in conducting the hearing; they are "not bound to hear all of the evidence tendered by the parties" although they "must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129–30 (7th Cir. 1997) (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985)).

Here, Kurlan and VTrader argue that the arbitrators denied them a fundamentally fair hearing for two main reasons: (1) they refused to postpone the hearing to allow Kurlan and VTrader to present additional evidence, and (2) they refused to subpoena DeNio, who had material evidence to the case.[6] First, Kurlan and VTrader argue that they only had one session to present their case, claiming that the Urquharts took an entire week of the hearing to put on their case and that he did not have the opportunity to testify in his own case. But even during the Urquharts' presentation of their case, much of the panel's and parties' time was spent addressing Kurlan and VTrader's defense. *See, e.g.*, Doc. 21-1 at 339–40 (arbitrators "believe that . . . a good chunk of the pace has to do with the defense that [Kurlan and VTrader] were putting on during the first half" of the arbitration proceedings). Indeed, Kurlan testified at length during the

---

[6] In their motion to vacate, Kurlan and VTrader also reference the fact that, if they had been given more time, Kurlan's attorney would have cross-examined the Urquharts. *See* Doc. 20 at 11–12. They fail to develop any such argument on this issue in their memorandum, only stating that Kurlan's counsel's cross-examination of Jason was truncated. *See* Doc. 21 at 22. This is not sufficient to develop the argument and the Court need not address it further. *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."). But even so, as the Urquharts discuss in their response, Kurlan himself cross-examined both Jason and Doug and Kurlan's counsel had the opportunity to again question Jason during the additional session. Kurlan's counsel did not indicate that his questioning of Jason was truncated in any way, instead stating that he did not have any additional questions for Jason. *See* Doc. 21-1 at 398. Kurlan's counsel did not request Doug's appearance at the November 30 session.

first week of the hearing, which Kurlan and VTrader erroneously claim was devoted to the Urquharts' case.[7] Kurlan could have chosen to testify again on the sixth day of hearings, but he instead chose to devote his time to calling (and recalling) other witnesses.[8]

Nor can Kurlan and VTrader demonstrate that the panel unreasonably refused to postpone the hearing to hear from Mankin or DeNio, a claim further undermined by the fact that Kurlan and VTrader have not demonstrated that their testimony would have been non-cumulative, pertinent, and material. *See Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (7th Cir. 2006) (to warrant vacatur for arbitrators' denial of postponement of hearing, movant must demonstrate that panel had no reasonable basis for denying continuance and that movant suffered prejudice from refusal to delay proceedings); *Wilson*, 1998 WL 749065, at *5 ("While it is true that an arbitrary denial of a reasonable request for postponement may serve as grounds for vacating an arbitration award, arbitrators are nonetheless to be accorded a degree of discretion in exercising their judgment with respect to a postponement request. Therefore, if a reasonable basis exists for an arbitrator's decision not to grant a postponement, the court will be reluctant to vacate an award on the ground of arbitrator misconduct." (citation omitted)). Addressing Mankin, VTrader's accountant, in an affidavit, he indicates that he was out of the country in November 2015, unavailable by telephone or email. But this contradicts Kurlan's representation on November 5 that Mankin was in Hawaii at the time. Kurlan had indicated Mankin would be

---

[7] According to the Urquharts' calculations, Kurlan provided a 16 page opening statement, 243 pages of testimony in response to questioning by the Urquharts' counsel, and 37 pages of his own direct testimony and answers to the arbitrators' questions. *See* Doc. 33 at 33 (providing citations to Kurlan's testimony).

[8] The Urquharts suggest that Kurlan and VTrader left unused an hour of their allotted time on November 30, relying on counsel's text message to his wife indicating what time he finished with the hearings that night. Regardless of the timing (which the Court notes does not indicate the time zone in which it was sent), the Court observes that Kurlan's counsel stated to the panel that he did not intend to call any other witnesses, which would include calling Kurlan in his own direct case. At the time that statement was made, the transcript does not indicate that the arbitrators had commented that Kurlan's time to present his case was in any way limited or that they intended to finish at that time.

testifying by phone from Hawaii prior to the beginning of the hearings and so Kurlan could have either asked to call Mankin out of order or used the time he had on November 6 to call Mankin instead of the two other witnesses he called that day, knowing Mankin would later be unavailable. Kurlan and VTrader's failure to do so suggests that Mankin's testimony was not vital to their defense and that the request to continue the hearing until his return merely served as an excuse for Kurlan's new counsel to obtain additional time to familiarize himself with the case. These tactical decisions all provide the arbitrators with reasonable bases for denying Kurlan and VTrader's requests for continuances until Mankin returned to the country. *See El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (arbitrator could have determined "postponement was inappropriate because the parties had expended considerable time, effort and money based on the hearing dates, because of the arbitrator's own schedule, or because appellants' counsel had made an insufficient showing that he was unable to attend any of the scheduled three-day hearing," noting that "[a]ny or all of these explanations would provide a reasonable basis for the decision not to postpone"); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1464 (10th Cir. 1995) (finding arbitrator "well within his discretion in refusing to postpone the hearings" based on the "rather flimsy excuse" that one of the parties was "traveling overseas," particularly where additional detail about the travel was not provided).

Moreover, the Court cannot find that Kurlan and VTrader suffered any prejudice from Mankin's failure to testify. His affidavit suggests that he would not have added any information to the proceedings that the arbitrators did not already have before them. For example, his testimony about the structure of VTrader and TCM derives from those entities' operating agreements, both of which were in the record and discussed by the Urquharts' expert. Mankin's

13

proposed testimony appears to only address background information and not anything concerning representations made or not made to the Urquharts concerning their accounts.

As for DeNio, Kurlan and VTrader argue that the arbitrators should have subpoenaed him under the CBOE's rules because his testimony was vital to Kurlan and VTrader's defense. *See* CBOE Rule 18.22(f), Doc. 33-1 at 43. But once counsel appeared for Kurlan, Kurlan's counsel also could have attempted to subpoena DeNio under the same rule. *Id.* ("The arbitrators and any counsel of record to the proceeding shall have the power of the subpoena process as provided by law."). This did not happen, however, and Kurlan cannot use his *pro se* status as an excuse. *See Vinco Painting, Inc. v. Painters Dist. Council No. 30*, No. 09 C 308, 2010 WL 2891685, at *7 (N.D. Ill. July 19, 2010) (finding argument that "inexperience is not cause for a due process challenge" to be "well-taken"). Regardless, any subpoena to DeNio would have been futile because DeNio, located in Texas, resided outside the limits of the arbitrators' subpoena power. *See Alliance Healthcare Servs., Inc. v. Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 813 (N.D. Ill. Aug. 9, 2011) (court did not have the power to enforce out-of-district subpoenas issued by arbitrators).

Moreover, Kurlan and VTrader's argument that DeNio's testimony was vital to their defense is belied by the fact that they did not list him as a witness nor agree to conduct pre-hearing depositions, which would have avoided the issue of DeNio's failure to appear at the hearing. Indeed, Kurlan and VTrader's failure to identify DeNio as a witness in their pre-hearing disclosures would have warranted the arbitrators' exclusion of him as a witness in Kurlan and VTrader's case. *See* CBOE Rule 18.22(c), Doc. 33-1 at 42 ("The arbitrator(s) may exclude from the arbitration any documents not exchanged or identified or witnesses not identified in

14

accordance with the requirements of this paragraph.").[9]  Finally, Kurlan and VTrader have failed to demonstrate that DeNio's testimony would have been material and non-cumulative, providing only speculation as to its content from Kurlan's counsel, who does not indicate that he ever spoke to DeNio or has other personal knowledge as to DeNio's expected testimony.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" (citation omitted)).

Finally, Kurlan and VTrader argue that the additional session held on November 30 did not cure any of the procedural deficiencies that arose during the earlier week of hearings.  But the November 30 session provided Kurlan and VTrader with the opportunity to present additional evidence, as they requested.  They ultimately did not use all the time made available to them, undermining any argument that examinations were truncated or prevented because of time constraints; instead, Kurlan and his counsel appear to have made strategic decisions as to what evidence to present and cannot now complain about these decisions.  More important to undercutting Kurlan and VTrader's argument is the fact that, at the end of the hearing, the arbitrators asked both sides if "each party has had a chance to present a full and fair presentation of your respective cases."  Doc. 21-1 at 415.  Wachtel, representing Kurlan, stated, "I think to the

---

[9] In reply, Kurlan and VTrader suggest they did not need to identify DeNio as a witness given that the Urquharts identified DeNio on their witness list and the rules provide that a party need not identify witnesses "that parties may use for cross-examination or rebuttal."  Doc. 33-1 at 42.  But Kurlan and VTrader are arguing that they needed DeNio's testimony in their direct case, not that they planned only to cross-examine him, and so this belated attempt to remedy their failure to identify him as a witness goes nowhere.

15

best of our ability we tried to do that. Obviously, as I mentioned before, we would have liked to have spoken with a few more people and had a little more time to come to grips. As best we could, I believe we presented the best and fullest case we could." *Id.* This concession, when given the opportunity to present objections to the alleged fundamental unfairness on the record, effectively operates as a waiver of Kurlan and VTrader's argument that the arbitrators deprived Kurlan and VTrader of a fundamentally fair proceeding.[10] *See Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local 627*, 358 F.3d 459, 462 (7th Cir. 2004) ("The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award."); *United Food & Commercial Workers Local 100A v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1344 (7th Cir. 1991) ("If parties were allowed to withhold information during arbitration, and then use it to sandbag their opponents during enforcement proceedings, much of the efficiency and usefulness of arbitration would be lost."). Had Kurlan, and derivatively VTrader, believed additional testimony necessary or had issues with the proceedings, they had the opportunity to make such objections on the record at the end of the proceedings, but instead they declined to do so. Based on the Court's review of the objections raised by Kurlan and VTrader, the Court cannot conclude that the panel deprived Kurlan and VTrader of a fundamentally fair hearing so as to warrant vacatur of the award.

---

[10] Kurlan and VTrader argue that this cannot operate as a concession when Kurlan made multiple objections prior to this questioning. But to the extent Kurlan wanted to preserve these objections, his attorney should not have conceded that the proceedings were fair.

**CONCLUSION**

For the foregoing reasons, the Court denies the motion to vacate the arbitration award [20, 26-1], except to the extent that the Court remands the award to the arbitration panel for clarification of the award. This case is remanded to the arbitration panel to determine the apportionment of the award among the Urquharts as claimants and VTrader and Kurlan as respondents, and whether VTrader and Kurlan are jointly and severally liable for the damages awarded against them. The Court denies the motion to confirm the arbitration award [33] without prejudice to refiling after the arbitration panel has clarified the award.

Dated: February 28, 2017

_____
SARA L. ELLIS
United States District Judge